Izaak D. Schwaiger, SBN 267888
**SCHWAIGER LAW FIRM**
130 Petaluma Avenue, Suite 1A
Sebastopol, CA 95472
Telephone: (707) 595-4414
Facsimile: (707) 581-1983
E-mail: izaak@izaakschwaiger.com

John H. Scott, SBN 72578
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, California 94109
Telephone: (415) 561-9601
Facsimile:  (415) 561-9609
E-mail: john@scottlawfirm.net

Attorneys for the Plaintiffs ESTATE OF DAVID PELÁEZ CHAVEZ, by and through successor in interest, ROSA LOPEZ CRUZ, and ROSA LOPEZ CRUZ, ESTELLA CHAVEZ CRUZ, D.D.P.L., and S.S.P.L. individually.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTATE OF DAVID PELÁEZ CHAVEZ, by and through successor in interest, ROSA LOPEZ CRUZ, and ROSA LOPEZ CRUZ, ESTELLA CHAVEZ CRUZ, D.D.P.L., S.S.P.L., individually.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SONOMA, MICHAEL DIETRICK and DOES 1-25, inclusive.<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **EXCESSIVE FORCE**<br>2. **LOSS OF FAMILIAL ASSOCIATION**<br>3. **MUNICIPAL LIABILITY**<br>4. **WRONGFUL DEATH/ NEGLIGENCE/NEGLIGENCE PER SE**<br><br>**(42 U.S.C. SECTION 1983 AND PENDENT STATE CLAIMS)**<br><br>*JURY TRIAL demand* |

COME NOW PLAINTIFFS, ESTATE OF DAVID PELÁEZ CHAVEZ, by and through successor in interest, ROSA LOPEZ CRUZ, and ROSA LOPEZ CRUZ, ESTELLA CHAVEZ CRUZ, D.D.P.L., and S.S.P.L. individually, who complain of defendants, and each of them, and alleges as follows:

## INTRODUCTION

1.  This civil rights action arises out of the killing of David Peláez Chavez, a 36-year-old migrant worker who, in the midst of crisis and a threat to no one, was shot three times by Sonoma County Sheriff's Deputy Michael Dietrick.

2.  David was a loving husband to his wife, Rosa, a cherished son to his mother, Estella, and a proud father to his son D.D.P.L. and daughter S.S.P.L. His death has been an immeasurable loss to those who loved him and relied upon him.

3.  Deputy Michael Dietrick is the Sonoma County deputy sheriff who shot and killed David. He was hired by the Sonoma County Sheriff in 2017, following his departure from the Clearlake Police Department in the wake of another on-duty shooting.

## JURISDICTION & VENUE

4.  This action is brought pursuant to 42 U.S.C. §§ 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

5.  The claims alleged herein arose in the County of Sonoma in the State of California. Venue for this action lies in the United States District Court for the Northern District of California under 28 U.S.C. § 1391(b)(2).

6.  Pursuant to Gov. Code Sec. 910, six-months tort claims were timely submitted to the County of Sonoma on August 17, 2022.

7.  With respect to Plaintiffs' supplemental state claims, Plaintiffs request that this court exercise supplemental jurisdiction over such claims as they arise from the same facts and circumstances which underlie the federal claims.

## PARTIES

8. David Peláez Chavez was an individual residing in Lake County, California. The claims made by the ESTATE OF DAVID PELÁEZ CHAVEZ, are brought by ROSA LOPEZ CRUZ, the successor in interest to the Estate of David Peláez Chavez pursuant to California Code of Civil Procedure § 377.32.

9. Plaintiff ROSA LOPEZ CRUZ is a resident of Putla Villa de Guerrero, Oaxaca, Mexico, and is the lawful wife of David Peláez Chavez. Plaintiff Rosa Lopez Cruz brings these claims individually for wrongful death and violation of her personal rights, as successor in interest to Decedent David Peláez Chavez, asserting survival claims for David Peláez Chavez, and as the representative of the Estate of her slain husband. She brings these claims under state and federal law.

10. Plaintiff D.D.P.L., a minor, is the natural son of David Peláez Chavez and a resident of Putla Villa de Guerrero, Oaxaca, Mexico. Plaintiff D.D.P.L., by and through his mother and Next Friend Rosa Lopez Cruz, brings these claims individually for wrongful death and violation of his personal rights, and as successor in interest to Decedent David Peláez Chavez, asserting survival claims for David Peláez Chavez. He brings these claims under state and federal law.

11. Plaintiff S.S.P.L., a minor, is the natural daughter of David Peláez Chavez and a resident of Putla Villa de Guerrero, Oaxaca, Mexico. Plaintiff S.S.P.L., by and through her mother and Next Friend Rosa Lopez Cruz, brings these claims individually for wrongful death and violation of her personal rights, and as successor in interest to Decedent David Peláez Chavez, asserting survival claims for David Peláez Chavez. She brings these claims under state and federal law.

12. Plaintiff ESTELLA CHAVEZ CRUZ is a resident of Putla Villa de Guerrero, Oaxaca, Mexico, and is the natural mother of David Peláez Chavez. Plaintiff Estealla Chavez Cruz brings these claims individually for violation of her personal rights.

13. Defendant COUNTY OF SONOMA is a public entity situated in the State of California and organized under the laws of the State of California. Defendant COUNTY OF

SCHWAIGER LAW FIRM
130 PETALUMA AVENUE, SUITE 1A
SEBASTOPOL, CA 95472

SONOMA is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies. At all times relevant to the facts alleged herein, Defendant COUNTY OF SONOMA was responsible for assuring that the acts, omissions, policies, procedures, practices and customs of its employees complied with the laws and the Constitutions of the United States and of the State of California.

14. The Sonoma County Sheriff's Office is a subdivision of Defendant County of Sonoma.

15. At all relevant times, Defendant MICHAEL DIETRICK was a deputy sheriff and employee of the County of Sonoma.

16. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 25 inclusive, are unknown to the Plaintiffs, who therefore sue said defendants by such fictitious names. Defendants DOES 1 through 25, and each of them, were responsible in some manner for the injuries and damages alleged herein. Plaintiffs are informed and believe and thereupon alleges upon information and belief that each of them is responsible, in some manner, for the injuries and damages alleged herein.

17. In doing the acts and/or omissions alleged herein, the individual defendants, including DOES 1 through 25, acted in concert with each of said other defendants herein.

18. At all relevant times, Michael Dietrick acted under color of state law in the course and scope of his duties as an agent and employee of the County of Sonoma.

19. Each of the Defendants caused and is responsible for the unlawful conduct resulting in the death of David Peláez Chavez by personally participating in the conduct, or acting jointly and in concert with others who did so; or by authorizing, acquiescing or failing to take action to prevent the unlawful conduct; or by promulgating policies and procedures pursuant to which the unlawful conduct occurred; or by failing and refusing to initiate and maintain adequate supervision, discipline, hiring, and/or training.

## STATEMENT OF FACTS

20. David Peláez Chavez was thirty-six years old when he was killed by Sonoma County Deputy Sheriff Michael Dietrick. David was a migrant worker from Mexico who left home to find a better future for his family. He worked in the vineyards of California's wine country and as a skilled tradesman, scraping together a living and sending his paychecks back to his family in Mexico. David was a beloved husband, loving father, and cherished son.

21. On the morning of July 29, 2022, Sonoma County Sheriff's deputies were dispatched to a rural area near Geyserville after receiving a report that an unidentified barefoot man had thrown a rock through a house window. After being confronted by area residents, the man fled in a truck that belonged to one of the resident's gardener. The barefoot man was David Peláez Chavez.

22. Deputy Dietrick arrived on scene and questioned the property owner who advised that David had taken the truck and driven off erratically. He advised Dietrick that there was no way out of the area into which the man had fled.

23. Dietrick followed after David in his patrol vehicle, and in a few moments came across a neighbor who advised that David had driven through his gates and was at a nearby home. Dispatch advised Dietrick that another reporting party had called to say that David had fled down a hill, and that he was at a nearby home. By the time the deputy arrived at the home, David had already left. The neighbor offered Dietrick a ride in his side-by-side off road vehicle. As the two drove in the direction David had fled, the neighbor explained to Dietrick that he had tried to get David to sit down, but that David looked worried and said that somebody was trying to kill him.

24. The two shortly encounter Deputy Anthony Powers who joined them in the side-by-side. The search continued over rugged terrain and through the adjoining vineyards for several minutes. Powers commented to Dietrick, "This guy really seems like he's on one." Dietrick replied, "Fuck yeah, dude," and then commented, "He has travelled some fucking distance. Barefoot."

25. The deputies arrived at another residence and contacted the occupant, who said that someone had stolen one of his ATVs and left a gate open. Dietrick radioed to dispatch his location, and that the gate to the property was open allowing other deputies to respond. The deputies quickly located fresh tracks from the ATV and followed them on the side-by-side further into the hills, but after a few minutes they lost site of the trail. The deputies were advised that backup had arrived at the residence they had just left.

26. "I wonder if he came up here, realized this went to nothing, and then went back down," said Powers. Their civilian driver replied, "You're going into your inner meth head." All three laughed and followed the tracks back down the hill where they found another open gate and picked up a new set of tracks through rough terrain. "This guy's gotta be crazy," said the driver.

27. A few moments later, the deputies found the stolen ATV abandoned with its engine running. David was not there. The deputies dismounted and proceeded on foot along a livestock trail, and then toward the crest of the hill.

28. Powers proceeded to the top of the hill for a better view, and Dietrick split off to lower terrain. The area was wide open rural rangeland with unobstructed views for hundreds of yards. Rock outcroppings and trees dotted the horizon. There were no houses, structures or people anywhere.

29. After a few minutes, Powers found footprints in the dirt, then spotted David ahead. He radioed to Dietrick, "I have eyes on. He's at the top of the hill. His back's towards me. He's taking a break right now. I'm sneaking up on him." Dietrick responded, "Copy, I'm trying to make it to you," as he huffed up the hillside. "Fuck me. Shit." Dietrick wheezed, as he stopped to catch his breath. Dietrick took a few more steps, then stopped again winded, then started again, then stopped, bent-over and struggling to breathe.

30. Ahead, Powers crouched down and radioed his location to dispatch. He reported that David was holding a hammer in one hand, and "maybe a hatchet" in the other. Powers said David was "super tired. He keeps bending over."

31. "I'm right behind you, Powers," Dietrich breathed heavily into his radio. "You want me to come up further?" "Yeah," responded Powers. "He's kind of facing to the south right now, leaning up against a rock. Do you see me laying down?" "I can see you, just not him," Dietrick responded. "He's directly in front of me," said Powers. "I'd say about fifty yards."

32. David moaned loudly as Dietrick closed the distance to Powers. Over the radio, Powers guided backup deputies toward their position. David began yelling in Spanish.

33. "Alright, he sees us," said Powers, and rose to his feet. "Mi amigo!" yelled Dietrich. "No problemas! Come on!" "Abajo!" yelled Powers, ordering David to come down in broken Spanish. "Abajo!"

34. "Por favor!" screamed David in fear.

35. "Agua?" the deputies yelled out.

36. "Ustedes me van matar!" David called out, and turned to run, disappearing over the crest of the hill. If the deputies understood Spanish, they would have known David was saying, "You guys are going to kill me." But his words had no meaning to them.

37. The deputies gave chase, following after David down the other side of the hill and into a steep and overgrown creek bed. About this time, the Sheriff's helicopter, Henry-1, arrived and began circling overhead. With backup following behind them, the terrain boxing David in, and with support from the air, David could not escape.

38. After approximately ten minutes Powers caught up to David. Powers attempted to speak to David in broken Spanish. "Senor! Fuckin', no mas! Aqui, por favor! No problemo!"

39. David was standing in the shallow creek with a hammer and small garden tiller in one hand, waiving his hands over his head at the helicopter circling above, and screaming for help. "Senor! Put the fucking shit down! No mas!" Powers called out as David turned and began walking further down the creek. Powers tried to re-engage David in dialogue, attempting to talk about his family. David responded, "Si. Ya les llame. Esque no erea mi nombre. Marque le otra ves, para confirmar que no me contestan." (Yes, I called them. It's because it's not my name. (I

need to) dial again to confirm that they don't answer.) Though Powers could not understand David, it was clear that he was in an altered mental state.

40. Powers followed after David down the creek, still attempting to engage him in conversation without success. David crossed out of the shallow water and onto dry ground. He began waving his arms again at the helicopter. As Powers approached, he drew his taser and pointed it at David. David bent over and picked up a rock from the stony bank. Powers quickly backed away, creating distance between himself and David. "No mas! No mas!" Powers called out, but David turned and walked away.

41. Meanwhile, Deputy Dietrick had worked his way behind David. As David walked away from Powers, Dietrick intercepted him. "Drop it!" Dietrick yelled, pointing his service handgun at David. "Drop it now!"

42. David raised his hands toward the helicopter and yelled at the sky. "Put it down!" commanded Dietrick. David waved at the helicopter and kept yelling. "Put it down!" yelled Dietrick. "Ustedes me quieren matar!" (You guys want to kill me!) Exhausted, David dropped the stone and bent over with his hands on his knees, trying to catch his breath.

43. Deputy Powers scrambled out of the creek bed to David's position in time to see Deputy Dietrick pointing his handgun at David from uphill, about twenty feet away. "Hey!" called out Powers as he approached with his Taser drawn, but his gun holstered. David turned to Powers, then stooped over again. "Put it down!" yelled Dietrick. Before he had completed his own words, Sonoma County Sheriff's Deputy Michael Dietrick fired three rounds into David's body. One round entered David's chest, another into his arm, and the third into his brain. Near simultaneously, Powers fired his Taser at David, a non-lethal and appropriate response to the situation. But Powers' good tactics and discretion was for nothing, as David lay bleeding to death on the rocks. He died at the bottom of that ravine, alone and afraid.

44. David's death was unnecessary. While his behavior was strange and erratic, he posed no more than a hypothetical threat to anyone. Despite his bizarre behavior, at no time did he try to hurt a soul. He was plainly in an altered mental state – whether because of drugs or because of a

mental health crisis is unknown at this time. He was barefoot, exhausted, and had nowhere to go. Time and distance were on the deputies' side. Deadly force simply was not an option.

### STATEMENT OF DAMAGES

45. As a result of the acts and/or omissions alleged herein, Plaintiff David Peláez Chavez, bringing this action by and through his Estate, suffered general damages including extreme and severe fear, pain and suffering in an amount to be determined according to proof.

46. As a result of the acts and/or omissions alleged herein, Plaintiff Rosa Lopez Cruz was deprived of familial association with her husband, including the loss of his love, affection, comfort, society, consortium, services, solace, moral support, and economic support in an amount to be determined according to proof.

47. As a result of the acts and/or omissions alleged herein, Plaintiffs D.D.P.L. and S.S.P.L. were deprived of familial association with their father, including loss of his love, affection, comfort, society, services, solace, moral support, and economic support in an amount to be determined according to proof.

48. As a result of the acts and/or omissions alleged herein, Estella Chavez Cruz was deprived of familial association with her son, including loss of his love, affection, comfort, society, services, solace, moral support, and economic support in an amount to be determined according to proof.

49. All plaintiffs suffered immeasurable pain and suffering, including emotional distress. David's survivors suffered funeral and burial expenses, including the cost of the repatriation of David's remains to Mexico.

50. The acts and omissions of Defendants Micheal Dietrick and Does 1-25 were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Plaintiffs. Plaintiffs therefore pray for an award of punitive and exemplary damages against these defendant in an amount according to proof.

51. Plaintiffs have retained private counsel to represent them in this matter and are entitled to an award of attorneys' fees and costs.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
[42 U.S.C. §1983 – EXCESSIVE FORCE – DEFENDANT DIETRICK]

52. Plaintiff hereby alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

53. Defendant Dietrick violated David's clearly established right to be free from excessive and unreasonable force as guaranteed by the Fourth Amendment to the United States Constitution.

54. An objectively reasonable officer would have known that the use of excessive, unreasonable, and deadly force on David would cause severe and excruciating pain and suffering, and result in his death.

55. Defendant Dietrick acted willfully, wantonly, maliciously, oppressively, and with conscious disregard to David's rights.

56. Defendant Dietrick's misconduct caused David to suffer excruciating pain and fear before he died.

WHEREFORE, Plaintiff Estate of David Peláez Chavez prays for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION
[42 U.S.C. §1983 – DEPRIVATION OF FAMILIAL ASSOCIATION – DEFENDANT DIETRICK]

57. Plaintiffs hereby re-allege and incorporate by reference as though fully set forth herein all prior paragraphs of this Complaint.

58. By and through the acts and omissions alleged herein, Defendant Dietrick deprived Rosa Lopez Cruz of the familial relationship with her husband, Estella Chavez Cruz of the familial association of her son, and D.D.P.L. and S.S.P.L. of the familial association of their father, thereby violating these plaintiffs' rights under the First and Fourteenth Amendments to the Constitution of the United States.

59.     Defendant Dietrick knowingly, maliciously, and with conscious and reckless disregard for the rights and safety of Plaintiffs, acted with deliberate indifference and/or a purpose to harm David.

WHEREFORE, Plaintiffs Rosa Lopez Cruz, Estella Chavez Cruz, D.D.P.L., and S.S.P.L pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
[42 U.S.C. §1983 – MUNICIPAL LIABILITY FOR UNCONSTITUTIONAL CUSTOMS AND PRACTICES – DEFENDANT COUNTY OF SONOMA]

60.     Plaintiffs hereby re-allege and incorporate through reference all prior paragraphs of the Complaint.

61.     Through its final policymakers the County of Sonoma, acting with deliberate indifference to the rights of David and his family, and of the public in general, knowingly maintained, enforced, and applied customs and practices of:

　　a. Encouraging, accommodating, or ratifying deputies use of excessive, unreasonable, and sometimes deadly force;

　　b. Encouraging, accommodating, or facilitating a code of silence among deputies, employees, and supervisors, pursuant to which false reports were generated, excessive and unreasonable force was covered up, whistleblowers were punished, internal investigations were performed with predetermined outcomes, and documented instances of perjury and dishonesty were ignored. Sonoma County deputy sheriffs were aware of these policies, and aware that they would be protected from discipline for any use of force, no matter how excessive. **In its *entire history*, no deputy within the Sonoma County Sheriff's Office has ever reported another for the use of excessive force. No deputy has ever been disciplined for failure to report excessive force. No deputy has ever been disciplined for writing a false report. No deputy has ever been disciplined for using excessive force. And no shooting has ever been found to have violated department policy.**

    c. Employing and retaining deputies such as Dietrick with problematic histories such as Dietrick who the County knew or in the exercise of reasonable care should have known were violent, abused their authority, and mistreated members of the public;

    d. Inadequately supervising, training, and disciplining deputies including Dietrick, who the County knew or in the exercise of reasonable care should have known were violent, abused their authority, and mistreated members of the public;

    e. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the reckless and intentional misconduct by deputies;

62. By reason of the aforementioned customs and practices, David Peláez Chavez was grievously injured and subjected to unbearable and excruciating pain and suffering, and ultimately killed.

63. The County of Sonoma through officials unnamed had actual or constructive knowledge of the constitutionally deficient customs and practices alleged above. But despite this knowledge, the County of Sonoma accepted and condoned these illegal customs and practices, thereby ratifying them, and acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to rights of David, his family, and to the general public.

64. These customs and practices were so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the ultimate injuries to David Peláez Chavez and his family.

65. By reason of the aforementioned acts and omissions, David Peláez Chavez was needlessly killed and his family caused to suffer the irreparable loss of his love, affection, society, and support as detailed elsewhere herein.

WHEREFORE, Plaintiffs Estate of David Peláez Chavez, Rosa Lopez Cruz, Estella Chavez Cruz, D.D.P.L., and S.S.P.L pray for relief as hereinafter set forth.

## PENDENT STATE CLAIM
### FOURTH CAUSE OF ACTION

[WRONGFUL DEATH/NEGLIGENCE/NEGLIGENCE PER SE – DEFENDANTS COUNTY OF SONOMA, DIETRICK, AND DOES 1-25]

66. Plaintiffs hereby re-allege and incorporate through reference all prior paragraphs of the Complaint.

67. Defendant Dietrick, while working in the course and scope of his employment as a Sonoma County deputy sheriff, employed negligent tactics and intentionally and/or without due care killed David Peláez Chavez. David's death directly resulted from Dietrick's unsafe, improper, unnecessary, and negligent tactics, and as a result of these intentional and negligent acts, David Peláez Chavez suffered serious injuries and ultimately died. Defendant Dietrick lacked any reasonable justification for killing David Peláez Chavez.

68. Defendant Dietrick owed David the duty to act with due care in the execution and enforcement of any right, law, or legal obligation. He owed David's family the duty to act with reasonable care.

69. These general duties of reasonable and due care owed to Plaintiffs include but are not limited to the following specific obligations:

   a. A duty to refrain from using excessive and/or unreasonable force against David Peláez Chavez;
   b. A duty to refrain from unreasonably creating a situation where force, including but not limited to deadly force is used;
   c. A duty to refrain from the unnecessary use of deadly force;
   d. A duty to refrain from abusing the authority granted him by law;
   e. A duty to refrain from violating Plaintiffs' rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise provided by law.

70. Additionally, the general duties of reasonable care and due care were owed to the Plaintiffs by the County of Sonoma (acting through its responsible employees and agents, including DOES 1-25), and include but are not limited to the following specific obligations:

   a. A duty to properly and adequately hire, investigate, train supervise, monitor, evaluate, and discipline SCSO deputies under their supervision, including Deputy Dietrick, to ensure that those employees act at all times in the public interest and in conformance with the law;

   b. A duty to make, enforce, and at all times act in conformance with constitutionally sound policies, training, and customs to protect the rights of the public, and Plaintiffs specifically;

   c. A duty to refrain from making, enforcing, and/or tolerating the wrongful procedures, training, and customs set forth in Para. 60.

71. Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs.

72. Dietrick's actions were further in direct violation of Cal. Pen. Code Sec. 243(d), battery causing serious bodily injury.

73. Dietrick's actions were further in direct violation of Cal. Pen. Code Sec. 245(a)(2), assault with a deadly weapon.

74. Dietrick's actions were further in direct violation of Cal. Pen. Code Sec. 245(a)(4), assault with force likely to cause great bodily injury.

75. Dietrick's actions were further in direct violation of Cal. Pen. Code Sec. 245(b), assault with a semiautomatic firearm.

76. Dietrick's actions were further in direct violation of Cal. Pen. Code Sec. 192(a), voluntary manslaughter, 192(b), involuntary manslaughter, and/or 187(a), murder in the second degree.

77. The violations of these laws were a substantial factor in causing the death of David Peláez Chavez.

78. The County of Sonoma is vicariously liable for the unlawful acts and omissions of Michael Dietrick as alleged herein.

WHEREFORE, Plaintiffs Estate of David Peláez Chavez, Rosa Lopez Cruz, Estella Chavez Cruz, D.D.P.L., and S.S.P.L pray for relief as hereinafter set forth.

### PRAYER FOR RELIEF

Plaintiffs pray for relief as follows:

1. For compensatory and economic damages according to proof;
2. For general damages according to proof;
3. For an award of exemplary or punitive damages against the individual defendants;
4. For an award of attorneys' fees and costs as permitted by law; and
5. For such other and further relief as the Court may deem necessary and appropriate.

### JURY TRIAL DEMANDED

Plaintiffs hereby request a jury trial on all issues so triable.

Dated:  October 31, 2022                    SCHWAIGER LAW FIRM


                                            By: Izaak D. Schwaiger__
                                                Izaak D. Schwaiger
                                                Attorney for Plaintiffs

SCHWAIGER LAW FIRM
130 PETALUMA AVENUE, SUITE 1A
SEBASTOPOL, CA 95472